[No. 15485. Department One. December 5, 1919.]

EDWIN CAREY, *Appellant,* v. CHARLES WILSEY *et al., Respondents.*[1]

PARTNERSHIP (28, 67) — ACQUIRING ADVERSE TITLE — ESTOPPEL — RETIRING PARTNER. Where a partnership agreement for logging certain tracts of lands provided for purchase of the timber at stated prices, and part of the timber on a tract was cut before its purchase, treating the timber as a partnership asset and its price as a liability, a retiring partner is estopped to acquire and assert an adverse title to the timber superior to the rights which he sold to his copartner upon dissolution of the partnership.

Appeal from a judgment of the superior court for King county, Jurey, J., entered February 3, 1919, upon findings in favor of the defendants, in an action in tort, tried to the court. Affirmed.

*Peterson & Macbride,* for appellant.
*Chas. D. Fullen,* for respondents.

[1]Reported in 185 Pac. 600.

PARKER, J.—The plaintiff, Edwin Carey, commenced this action in the superior court for King county, seeking recovery of the value of standing timber, claiming to be the owner thereof, which he alleges was cut and appropriated by the defendants Wilsey and Pinney. The principal defense made is that whatever right the plaintiff acquired in the timber was inferior and subject to, and acquired with full notice of, the right of the defendant Wilsey therein. Trial before the court without a jury resulted in findings and judgment against the plaintiff denying him any recovery, from which he has appealed to this court.

The controlling facts may be summarized as follows: Pinney's connection with the matters here in controversy was at all times as agent of Wilsey. In the spring of 1917, Pinney, acting for Wilsey, and William Carey, who is the father of the plaintiff, Edwin Carey, entered into negotiations looking to logging operations by the cutting and marketing of timber then standing upon certain tracts of land situated on Vashon Island, in King county, including the ten-acre tract and the timber thereon here in question, which was then owned by one Frasch. In the spring of 1917, William Carey and Pinney visited the owners of the several tracts and obtained offers from each of them to sell their timber, Frasch agreeing, or at least offering, to sell to them the timber on his ten-acre tract for $100. Thereafter, William Carey, and Pinney, acting for Wilsey, entered into a written partnership contract looking to the cutting and marketing of the timber standing on these several tracts, in which partnership contract is recited the fact that they had examined the timber standing upon these several tracts, including Frasch's ten-acre tract, and that they could purchase the timber at prices which were therein stated, according to the offers of sale made by the respective owners,

including Frasch's offer to sell the timber on his ten-
acre tract for $100. This partnership contract contains
an agreement that the partnership would purchase the
timber on these several tracts at the prices stated, in-
cluding the Frasch timber, and also other provisions
looking to the partnership cutting and marketing of
the timber. It is apparent that the partnership was
formed for the express purpose of purchasing, cutting
and marketing the timber standing on these several
tracts of land, including the timber on the Frasch ten-
acre tract. William Carey, being an experienced log-
ger, was to manage the logging operations, while
Wilsey, or rather Pinney acting for him, was to man-
age the business affairs of the partnership, including
the marketing of the timber. The logging operations
proceeded accordingly under the directions of William
Carey.

We may assume that the purchase of the timber
upon the several tracts of land, other than that upon
the Frasch ten-acre tract, had been consummated by
the payment of the purchase price in accordance with
the several offers of sale made by the owners. How-
ever, during the fall of 1917, or, in any event, before
the dissolution of the partnership, which occurred on
February 26, 1918, about one-third of the timber stand-
ing upon the Frasch ten-acre tract had been cut and
appropriated by the partnership, under the direction
of William Carey, both partners manifestly proceeding
upon the assumption that the understanding with
Frasch was such that the partnership had a right to
so take the timber, and in doing so, it in no event
rendered itself liable to Frasch other than for the
$100 purchase price which Frasch had offered to take
for the timber. In other words, we think the offer of
Frasch to sell for $100, the partnership agreement,
and the action of the partners thereunder, in which

William Carey was the principal participant, renders it plain that both partners regarded the timber standing upon the Frasch tract as an asset of the partnership, and the $100 purchase price a liability of the partnership owing to Frasch. On February 26, 1918, the partnership was dissolved by mutual consent, a written contract being entered into between William Carey and Wilsey, Pinney acting for Wilsey, stating the terms of dissolution, which contract by its terms was in effect a transfer by William Carey of all his right, title and interest in and to all of the timber in which the partnership had any interest. Wilsey assumed all the indebtedness of the partnership. Thereafter, on March 8, 1918, William Carey, acting, as he claims, for his son, Edwin Carey, the plaintiff in this action, paid to Frasch $100 of the son's money, taking from Frasch a receipt therefor, which upon its face purports to convey the timber upon the Frasch tract to the plaintiff. Thereafter this action was commenced by Edwin Carey, seeking recovery from Wilsey and Pinney of the sum of $900, claimed as the value of the timber belonging to him and taken from the Frasch tract by Wilsey and Pinney.

The theory of counsel for Wilsey and Pinney and of the trial judge, as we understand them, is that, as between the partners, William Carey and Wilsey, William Carey is estopped to deny the partnership ownership of the timber, because of his actions which in effect was a joining by him in the partnership's claim of ownership thereof, by the treating of the timber as an asset of the partnership, and the $100 purchase price, named by Frasch, as a liability of the partnership owing to Frasch for the timber, and because of his transfer of his interest in the timber to Wilsey, his partner, upon the dissolution of the partnership; and that, since William Carey was acting for

his son, Edwin Carey, in the assuming to purchase the timber from Frasch, after the dissolution of the partnership, Edwin Carey is in no better position than William Carey; that is, he is chargeable, by reason of such agency, with full knowledge of all the rights of Wilsey, as against William Carey, acquired under the partnership dissolution contract. We think this is a correct view of the rights of the parties to this action. We do not lose sight of the fact that probably there never was any contract binding upon Frasch to consummate the sale of the timber to the partnership; we are holding only that William Carey has no right to rely upon the want of any such binding contract. He had no right, under the circumstances, to acquire for himself or his son a title to the timber superior to that which he and his partner, Wilsey, were both assuming to possess prior to and at the time of their partnership dissolution contract, which title he conveyed to his partner, Wilsey, upon the dissolution of the partnership. ·

We think the case does not call for further discussion. The judgment is affirmed.

HOLCOMB, C. J., MAIN, MITCHELL, and MACKINTOSH, JJ., concur.